Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
John L. Schwab (Bar No. 307599)
john@kingsiegel.com
**KING & SIEGEL LLP**
724 S. Spring Street, Ste. 201
Los Angeles, California 90014
*tel*: (213) 465-4802
*fax*: (213) 465-4803

Attorneys for Plaintiff and the Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROBERT QUINTERO, individually and on behalf of all similarly situated individuals,

Plaintiff,

vs.

MILLER MILLING COMPANY, LLC, a California corporation, and Does 1-10, inclusive,

Defendants.

Case No. 2:19-CV-07459-DMG-JC

**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR:**

**(1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**

**(2) APPROVAL OF NOTICE TO CLASS MEMBERS AND RELATED MATERIALS;**

**(3) APPROVAL OF SETTLEMENT ADMINISTRATOR; AND**

**(4) SETTING HEARING FOR FINAL APPROVAL OF SETTLEMENT**

*Declarations of Julian Burns King, Robert Quintero, and Julie Green filed concurrently*

Judge: Hon. Dolly Gee
Date: May 8, 2020
Time: 8:30 a.m.
Dept.: 8C

Removed On: August 28, 2019

King & Siegel LLP

King & Siegel LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on May 8, 2020 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 8C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Dolly M. Gee, Plaintiff Robert Quintero, as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order: (1) preliminarily approving the Settlement as fair, adequate, and reasonable; (2) certifying the settlement Class; (3) appointing Julian Burns King, Elliot J. Siegel, and John L. Schwab of King & Siegel LLP as Class Counsel for the Settlement Class; (4) appointing Plaintiff Robert Quintero as Class Representative for purposes of settlement only; (5) authorizing the mailing of the proposed class action notice; (6) scheduling a final approval and fairness hearing.

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in Support thereof; the declarations of Julian Burns King and Robert Quintero in Support thereof; the Joint Stipulation of Settlement and Release of Class Action, and the proposed Class Notice, Share Form attached thereto; the proposed Order Granting Preliminary Approval of Settlement and Setting a Settlement Fairness Hearing; the other records, pleadings, and papers filed in this action; and upon such other documentary and verbal evidence or argument as may be presented to the Court at the hearing of this motion.

Dated: April 10, 2020

Respectfully Submitted,

**KING & SIEGEL LLP**

By: /s/ Julian Burns King

Julian Burns King
Elliot J. Siegel
John L. Schwab
Attorneys for Plaintiff and the Putative Class

King & Siegel LLP

## TABLE OF CONTENTS


**I. INTRODUCTION .......... 1**

**II. BACKGROUND AND PROCEDURAL HISTORY .......... 2**

A. CLAIMS AND ALLEGATIONS IN THE ACTION .......... 2

B. MILLER CHANGES ITS POLICIES AS A RESULT OF THIS LAWSUIT .......... 3

C. THE PARTIES ENGAGED IN INFORMAL DISCOVERY IN ADVANCE OF MEDIATION .......... 3

D. THE PARTIES ATTEND AN ALL-DAY MEDIATION SESSION AND ACCEPT A MEDIATOR'S PROPOSAL .......... 4

**III. SUMMARY OF SETTLEMENT TERMS .......... 5**

**IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL .......... 6**

A. LEGAL STANDARD .......... 6

B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE .......... 8

*1. The Strength and Risks of Plaintiff's Case .......... 8*

*2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation; Likelihood of Maintaining Class Action Status Through Trial .......... 13*

*3. The Amount Offered is Reasonable and Significant .......... 14*

*4. The Proposed Notice Process Provides Class Members With a Meaningful Notice of Their Rights .......... 14*

*5. The Settlement Is the Product of Sufficient Investigation and Discovery .......... 16*

*6. The Experience and Views of Counsel .......... 16*

*7. The Settlement Does Not Treat Any Stakeholder Preferentially .......... 18*

C. THE COURT SHOULD CONDITIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ONLY .......... 20

*1. Numerosity .......... 21*

*2. Commonality and Typicality .......... 21*

*3. Adequacy .......... 23*

*4. A Class Action is the Superior Mechanism for Adjudicating this Dispute .......... 23*

**V. CPT SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR ......... 25**

**VI. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING ....... 25**

**VII. CONCLUSION ........................................................................................ 25**

King & Siegel LLP

King & Siegel LLP

# TABLE OF AUTHORITIES

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013) ........................................11

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012)........................... 14

*AHMC Healthcare, Inc. v. Superior Court*, 24 Cal. App. 5th 1014 (2018), *review denied* (Oct. 10, 2018) ......................................................................................................9

*Alaniz v. California Processors, Inc.*, 73 F.R.D. 269 (N.D. Cal. 1976) .................................7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...............................................*passim*

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499 (2005)) ..........................................22

*Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327NC, 2014 WL 3610945 (N.D. Cal. July 21, 2014)..........................................................................................8

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ......................*passim*

*Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 U.S. Dist. LEXIS 10848, at *15 (E.D. Cal. Jan. 21, 2020) ................................................................. 23

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) ............................................ 19

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) .................................................7

*Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016) .........................................................................................20

*Chu v. Wells Fargo Investments, LLC*, No. 05-4526-MHP, 2011 WL 672645 (N.D. Cal. 2011) ................................................................................................ 12

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...............................*passim*

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ............................................................ 19

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)...................................................................... 13

*Davis v. Cox Commc'ns California, LLC*, No. 16-cv-989, 2017 WL 1496407 (S.D. Cal. Apr. 26, 2017)................................................................................... 13

*Diaz v. Grill Concepts Servs., Inc.*, 233 Cal. Rptr. 3d 524 (2018)..................................... 12

*Downey Surgical Clinic, Inc. v. OptumInsight, Inc.*, No. CV09-5457PSG (JCx), 2016 WL 5938722 (C.D. Cal. May 16, 2016) ..........................................................8

*East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977). ...............................24

*Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ........................................................................................................... 19

*Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042 (E.D. Cal. Jan. 17, 2020).................................................................... 18, 22

*Franco v. Ruiz Food Prods.*, No. 1:10-CV-02354-SKO, 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012)............................................................................ 23

*Garcia v. Cnty. of Los Angeles*, No. 15-cv-153549, 2018 WL 3218212 (C.D. Cal. May 21, 2018).................................................................................................... 14

*Graves v. United Indus. Corp.*, No. 2:17-cv-06983, 2020 WL 953210 (C.D. Cal. Feb. 24, 2020) ................................................................................................. 14

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996) ..............................................22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... *passim*

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .......... 22

*Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959 (N.D. Cal. 2019) .......... 21

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .......... 13

*Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2019 U.S. Dist. LEXIS 196964 (S.D. Cal. Nov. 13, 2019) .......... 23

*In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238KRBB, 2004 W.L. 1445101 (S.D. Cal. June 21, 2004) .......... 7

*In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) .......... 19

*In re First Capital Holdings Corp. Financial Products*, Case No. MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .......... 17, 18

*In re Nordstrom Commission Cases*, 186 Cal. App. 4th 576 (2010) .......... 13

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......... 17, 18

*In re Paxil Litig.*, 212 F.R.D. 539 (C.D. Cal. 2003) .......... 22

*Jack v. Hartford Fire Ins. Co.*, No. 09-cv-1683 MMA (JMA), 2011 WL 4899942 (S.D. Cal. Oct. 13, 2011) .......... 13

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) .......... 21

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. 2012) .......... 21

*Lang v. NCH Corp.*, No. cv-10-5729-DMG, 2011 WL 13128298 (C.D. Cal. Sept. 21, 2011) (Gee, J.) .......... 20

*Lazarin v. Pro Unlimited, Inc.*, No. C11-03609-HRL, 2013 WL 3541217 (N.D. Cal. 2013) .......... 12

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) .......... 24

*Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) .......... 8

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) .......... 22

*Moore v. Fitness Int'l, LLC*, No. 12-cv-1551 LAB (NLS), 2014 WL 12571448 (S.D. Cal. Jan. 22, 2014) .......... 13

*National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 13

*Pineda v. Bank of America*, 170 Cal. App. 4th 388 (2009) .......... 12

*Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997). .......... 19

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009); .......... *passim*

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......... 14

*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015) .......... 23

*Singh v. Roadrunner Intermodal Services, LLC*, No. 1:15-CV-01497-DAD-BAM, 2018 WL 2412325 (E.D. Cal. 2018) .......... 19, 20

*See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889 (2012) .......... 9



King & Siegel LLP

*Singer v. Becton Dickinson & Co.*, No. 08-cv-821 IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010) ........ 13, 20

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) ........ 21

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ........ 8

*Troester v. Starbucks Corp.*, 387 F. Supp. 3d 1019 (C.D. Cal. 2019), *as clarified on reconsideration*, 2019 WL 2902487 ........ 12

*True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ........ 22

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ........ 19

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ........ 20

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........ 15, 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........ 22

*Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ........ 20

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ........ 7

**STATUTES**

Cal. Bus. & Prof. Code § 17200, *et seq.* ........ 24

Cal. Lab. Code § 203 ........ 1, 11

Cal. Lab. Code § 226 ........ 1, 10

Cal. Lab. Code § 226.7 ........ 1, 11

Cal. Lab. Code § 510 ........ 1

Cal. Lab. Code § 558 ........ 1

Cal. Lab. Code § 1194 ........ 1

Cal. Lab. Code § 1194.2 ........ 10

Cal. Lab. Code § 1197.1 ........ 1

Cal. Lab. Code § 1182.12 ........ 1

Cal. Lab. Code § 2699, *et seq.* ........ *passim*

**RULES**

Fed. R. Civ. Proc. 23 ........ *passim*

**REGULATIONS**

9 C.F.R. § 785.48 ........ 9

**TREATISES**

7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1762 ........ 21

Manual for Complex Litigation, Fourth (Fed. Judicial Center 2004) ........ 7

NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.) ........ 14

**OTHER AUTHORITIES**

DLSE Op. Ltr. 1994.09.28 ........ 11

King & Siegel LLP

King & Siegel LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This motion seeks preliminary approval of a wage-and-hour class action settlement that, if approved by the Court, will fully resolve this action. Plaintiff Robert Quintero ("Plaintiff") alleged claims arising from Defendant Miller Milling Company, LLC's ("Miller Milling" or "Defendant") wage and hour practices: specifically, Defendant's practices of (1) rounding time punches to the nearest quarter-hour, (2) on-premises rest periods, and (3) requiring certain putative class members, including Plaintiff, to waive their right to off-duty meal periods. Plaintiff challenged these practices in a class action complaint alleging claims for (1) unpaid minimum wages under Lab. Code §§ 1182.12, 1194, 1197.1 and 1198 and unpaid overtime wages under Lab. Code §§ 510 and 1198 arising from Miller's timeclock rounding policy, which was eliminated in September 2019, and associated civil penalties under Lab. Code §§ 203 and 226; (2) claims relating to Miller's allegedly non-compliant policy requiring workers to remain on-premises during rest breaks in violation of Lab. Code § 226.7; failure to provide compliant meal periods by requiring certain workers to execute on-duty meal period agreements, Lab. Code §§ 226.7, 558, and 1198; and (3) PAGA penalties. Lab. Code § 2699, *et seq.* Dkt. 1-4, Ex. A ("Complaint").

Miller contested each and every claim and denied liability throughout this litigation. Following arm's-length negotiations overseen by an experienced wage and hour class action mediator, the parties reach a $500,000 settlement (the "Settlement") on behalf of a Settlement Class of approximately 131 workers "*who are or have been employed as hourly, non-exempt employees in California and performed work in the mill, maintenance, or sanitation departments at any time from July 27, 2015*" through February 28, 2020 (the "Class" or "Class Members"; as to dates, the "Class Period"). On a per-Class Member basis, the Settlement exceeds the value of similar settlements and is within the zone of reasonableness. The Settlement automatically includes all Class Members who do not expressly opt out, and funds do not revert to Defendant. In sum, the Settlement is fair and reasonable in light of the facts and the law.

Accordingly, this motion seeks an order (1) conditionally certifying the Class under

Federal Rule of Civil Procedure 23 for settlement purposes only and preliminarily approving the settlement; (2) approving their proposed Class Notice to be disseminated to Class Members pursuant to the Settlement Agreement[1]; (3) appointing CPT Group, Inc. ("CPT Group") as the Settlement Administrator; and (4) scheduling a hearing for final approval of the Settlement Agreement.

## II. BACKGROUND AND PROCEDURAL HISTORY

### A. Claims and Allegations in the Action

Defendant Miller Milling Company ("Miller" or "Defendant") is a flour milling operation with California plants and storage facilities located in Commerce, Oakland, and Fresno. King Decl. ¶ 13. Plaintiff Robert Quintero ("Plaintiff") is a resident of Los Angeles County, California who, from January 2016 through March 1, 2019, was an hourly, non-exempt employee of Miller who worked as a Utility in Miller's Commerce, California plant. Declaration of Robert Quintero ("Quintero Decl."), ¶ 2. Like other non-exempt employees, Miller required Plaintiff to punch in and out of work using a time clock. *Id.* ¶ 3. Miller's time system rounded employees' time entries to the nearest quarter hour for the duration of Plaintiff's employment. *Id.* ¶ 3. In addition, Plaintiff was told not to leave the premises during rest periods and was asked to agree to on-duty meal periods for certain shifts. *Id.* ¶ 4.

After an extensive investigation, including review of hundreds of pages of Plaintiff's personnel and payroll files, Plaintiff notified the Labor and Workforce Development Agency ("LWDA") and Defendant of his claims and intent to sue under California's Private Attorney General Act ("PAGA"), Lab. Code § 2699, *et seq.* King Decl., ¶ 14. Plaintiff filed the operative complaint on July 26, 2019 in Los Angeles County Superior Court (the "Complaint"). *See generally*, Dkt. 1-4; King Decl., ¶ 14. The Complaint alleges various wage and hour claims arising from Plaintiff's employment at Miller on behalf of "*all persons who are and/or were employed for at least one pay period as non-exempt employees by Miller [in] the State of*

[1] The Settlement is attached to this Motion as **Exhibit 1**. The proposed Notice of Class Action Settlement is attached to the Settlement Agreement as **Exhibit A**.

*California between July 25, 2015 and the date of trial.*" Dkt. 1-4, ¶ 4.

The Complaint challenged three primary practices. *First*, Plaintiff alleged that Miller implemented a uniform rounding policy that, on net, disadvantaged Class Members by depriving them of minimum wages and overtime compensation. *Id.*, ¶¶ 2, 11-21. *Second*, Plaintiff alleged that Miller prohibited Class Members from leaving the worksite during their 10-minute breaks in violation of *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal. 4th 1004 (2012). Dkt. 1-4, ¶¶ 2, 27-29. *Third*, Plaintiff alleged that Miller illegally required Class Members to execute written meal period waivers as a condition of employment. *Id.*, ¶¶ 3, 30-33. Plaintiff further sought derivative penalties for failure to provide timely and accurate wage statements; failure to timely pay wages when due; failure to maintain accurate payroll records; and PAGA penalties. *See generally*, Dkt. 1-4. On August 28, 2019, Miller removed on the basis of diversity jurisdiction and the Class Action Fairness Act. 28 U.S.C. §§ 1332(d), 1446, 1453.[2] Dkt. 1.

**B. Miller Changes Its Policies**

Shortly after being served with this lawsuit, Miller substantially revised its wage and hour policies. In September 2019 (the "Remediation Date"), it abandoned all timeclock rounding and began paying employees based on the number of hours actually worked. King Decl., ¶ 19. It implemented new policies and provided notice to all employees of their right to take uninterrupted meal and rest periods, and clarified that rest periods were off duty and personnel were free to leave the premises. *Id.*

**C. The Parties Engaged in Informal Discovery in Advance of Mediation**

In September 2019, counsel for Miller proposed mediation. King Decl., ¶ 17. Plaintiff agreed to mediate in December 2019, provided counsel for Miller produced documents sufficient to permit a full and fair evaluation of the claims alleged on behalf of the Class. Specifically, counsel for Plaintiff requested and received the following informal discovery in early

[2] Miller is based in Minnesota and is a Delaware corporation. Dkt. 1, ¶¶ 16-19.



King & Siegel LLP

December 2019: (1) the collective bargaining agreement applicable to employees in the Oakland facility; (2) all three employee handbooks used during the Class Period that set forth formal written meal and rest break policies; (3) updated policies implemented in Fall 2019 that evidence elimination of time clock rounding procedures; (4) meal period waivers executed by putative Class Members; (5) *all* employee punch records, by employee ID number and facility, from 2015 through the end of August 2019; (6) the total number of workweeks and putative class members; and (7) the final rate of pay for each putative Class Members, by employee ID number. King Decl., ¶ 18.

Plaintiff's counsel analyzed all of the data provided by Miller and retained the services of an expert, Jarrett Gorlick, who conducted numerous data analyses, including but not limited to whether Miller's rounding policy systematically undercompensated putative Class Members; the amounts of all underpayments; the number of missed meal periods based on time punch data; the number of rest periods to which putative Class Members were entitled; and the maximum and realistic exposure for each claim alleged in the Complaint. *Id.*, ¶ 20. Miller's production was fulsome and allowed Plaintiff's counsel to develop a sound understanding of the merits of the claims; their value; and the viability of the defenses asserted by Defendant. *Id.* ¶ 21.

### D. <u>The Parties Attend an All-Day Mediation Session and Accept a Mediator's Proposal</u>

On December 17, 2019, the parties attended a full-day mediation with Steven Pearl, Esq., a well-respected and experienced wage and hour class action mediator. *Id.* ¶ 22. The parties negotiated at arms' length. *Id.* The matter did not settle at mediation. *Id.* The following day, Mr. Pearl presented a mediator's proposal, which the parties accepted. *Id.* A memorandum of understanding was executed on February 12, 2020 and a fully executed Stipulation of Settlement ("Settlement") followed on April 1, 2020 after additional negotiations regarding specific terms of the Settlement and language for the proposed Rule 23 Class Notice. *See* **Exhibit 1**.



King & Siegel LLP

King & Siegel LLP

Based on thorough examination and investigation of the facts and law relating to Plaintiff's claims, Plaintiff's counsel believes that the Settlement is in the best interest of the Class. King Decl., ¶ 24. The parties' investigation informed counsel for both sides as to the strengths and weaknesses of their respective positions and allowed a fair and objective evaluation of the litigation risks in this case before the parties engaged in mediation. *Id.*

## III. SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement requires Miller to pay $500,000.00 as the Gross Settlement Amount ("GSA"). Ex. 1, ¶ 14. The settlement is claims made with no reversion to the Defendant. *Id.* After 180 days for the date of mailing, unclaimed payments will be remitted to the Controller of the State of California to be held for those Class Members who did not cash their checks, pursuant to the Unclaimed Property Law, Cal. Civ. Code § 1500, *et seq.* *Id.* ¶ 58. Employer-side payroll taxes are to be paid by Defendant outside the GSA. *Id.* ¶ 14.

The Net Settlement Amount ("NSA") is the balance of the Gross Settlement Amount after the following are deducted:

| **Total Settlement Amount:** | **$500,000** |
|---|---|
| Minus Court-approved attorneys' fees (up to): | $165,000 |
| Minus Court-approved costs (up to): | $20,000 |
| Minus Court-approved incentive payments (up to): | $7,500 |
| Minus PAGA allocation to LWDA: | $15,000 |
| Minus settlement administration costs (up to): | $10,000 |
| **Net Settlement Amount:** | **$292,500** |

The Settlement Class Period is defined as July 26, 2015 to February 28, 2020 or the date of Preliminary Approval, whichever is earlier. (Since it is after February 28, 2020, the Class Period ends on February 28, 2020.) Settlement ¶ 7. The Settlement Class is comprised of "*all non-exempt employees who were employed by Defendant in California and performed work in either the mill, maintenance, or sanitation departments at any time during the*

*Class Period who do not opt out of this Settlement*."[3] The Settlement Class is estimated to have 131 members, for an average payment of approximately $2,282.82 per Settlement Class Member ($292,500/131=$2,232.82). King Decl., ¶ 26. Each Class Member's share will be based on the Class Member's number of workweeks during the Settlement Class Period. Settlement, ¶ 9. Thus, the allocation awards a greater share of the Settlement to those who worked more shifts during the Class Period as those individuals would have a greater amount of potential damages. *Id.*

The Net Settlement Amount will be paid to all Settlement Class Members who do not submit a valid and timely opt-out request. *Id.* ¶¶ 47-54; *see also* Ex. 1 at Ex. A (Class Notice). The Class Notice explains the rights of all Settlement Class Members and what will happen if each Class Member does nothing, submits a request for exclusion, or submits an objection. *Id.* at pp. 1-2. The Notice further provides each Class Member with their estimated Individual Settlement Payment. *Id.* at p. 2. The Class Notice and Settlement administration process will be supervised and administered by CPT Group, Inc., following a fair and competitive bidding process. King Decl., ¶ 27.

Other than the Settlement Agreement, no agreements were made in connection with any settlement proposal in this case. *See* Fed. R. Civ. Proc. 23(e)(3); King Decl., ¶ 28.

## IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. Fed. R. Civ. Proc. 23(e). At the preliminary approval phase, the Court should consider whether it will be likely to: "(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Further, the Court may approve

---

[3] This class definition differs slightly from the formulation in the Complaint—which included all non-exempt employees at the relevant facilities, as opposed to those in the mill, maintenance, and sanitation departments—because non-exempt employees in administrative positions—the only non-exempt employees who are not members of the enumerated departments—were not subject to all of the policies and practices at issue in this case.



King & Siegel LLP

a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). District courts must consider various factors in evaluating a settlement proposal:

> *the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of class members to the proposed settlement.*

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). While courts must be careful to discern whether the settlement is a product of fraud, collusion, or overreaching by the negotiating parties, the court should not "intru[de] upon what is otherwise a private consensual agreement negotiated between the parties." *Id.* at 1027. "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Id.* at 1027. However, courts should ultimately recognize that "[s]trong judicial policy favors settlements." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

To grant preliminary approval of this class action settlement, the Court need only find that the settlement falls within the range of possible approval, or "the range of reasonableness." *See, e.g., Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238KRBB, 2004 W.L. 1445101, at *2 (S.D. Cal. June 21, 2004); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 615 (N.D. Cal. 1979); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976).[4] The Settlement meets and exceeds this threshold.

---

[4] The Manual for Complex Litigation, Fourth (Fed. Judicial Center 2004) ("Manual") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. Manual, §21.632. The Manual summarizes the preliminary approval criteria as follows:

> *Fairness calls for a comparative analysis of the treatment of the class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an*

King & Siegel LLP

**B. <u>The Settlement is Fair, Adequate, and Reasonable</u>**

The Settlement is fair, adequate, and reasonable in light of the inherent risks of litigation, class certification, and appeals. Plaintiff's counsel calculates the *maximum* realistic exposure—including claims that are likely to run into substantial obstacles as to class certification, as explained in greater depth below—at approximately $ 1.3 million. King Decl., ¶ 29. The proposed Settlement is more than one-third that amount, and solidly within the bounds of reasonableness. *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial); *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Downey Surgical Clinic, Inc. v. OptumInsight, Inc.*, No. CV09-5457PSG (JCx), 2016 WL 5938722 at *5 (C.D. Cal. May 16, 2016) (granting final approval where recovery was as low as 3.21% of potential recovery at trial).

Indeed, in light of the substantial risks on numerous claims, as described below, the proposed Settlement is fair, adequate, and reasonable.

**1. The Strength and Risks of Plaintiff's Case**

i. <u>Rounding-Related Claims.</u>

Under applicable law, rounding an employee's time is only allowed when the policy is "fair and neutral on its face *and* it is used in such a manner that it will not result, over a peri-

---

> *analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.*

*Id.* at § 21:62.

od of time, in failure to compensate the employees properly for all the time they have actually worked." *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 907 (2012) (emphasis added); *see also* 29 C.F.R. § 785.48(b) ("For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."). The policy must, "on average, favor[] neither overpayment nor underpayment." *Id.* at 901-902 ("Assuming a rounding-over-time policy is neutral, both facially and as applied, the practice is proper under California law because its net effect is to permit employers to efficiently calculate hours worked *without imposing any burden on employees*.") (emphasis added). If the policy *systematically* undercompensates employees, it is illegal. *See AHMC Healthcare, Inc. v. Superior Court*, 24 Cal. App. 5th 1014, 1027 (2018), *review denied* (Oct. 10, 2018); *see also See's Candy Shops, Inc.*, 210 Cal. App. 4th at 913.

Informal discovery confirmed that Plaintiff's rounding claims are the strongest claims alleged, and the most likely to be certified for class treatment. Plaintiff's expert's analysis of Class Members' time data showed that Miller's rounding policy failed, at a minimum, the second prong of the *See's Candy* test: it systematically deprived employees of compensation for all time worked. This analysis showed that Class Members were shorted an average of 2.2 minutes of pay per shift, with a net loss to the Class of 3,206.1 hours of compensable time in violation of California law. King Decl., ¶ 30. Only one-quarter of shifts resulted in overpayments because of the rounding policy, while more than twice as many shifts, or 63 percent, were underpaid. *Id.* Moreover, because 80 percent of Class Members' shifts were over eight hours long, most of the 3,206.1 unpaid hours worked were compensable at overtime rates of pay. *Id.*

Even as to rounding claims, however, Miller had reasonably strong defenses to class certification. Miller argued that it paid all Class Members at the Fresno facility and certain Class Members at the Commerce facility for an extra half-hour of work during certain shifts, thus eliminating any harm to these Class Members from underpayments due to rounding.





King & Siegel LLP

*Id.*, ¶ 31.

Plaintiff's expert calculated that Miller failed to pay Class Members approximately $140,000.00 in wages and interest, including unpaid minimum wages and overtime wages, as a result of its rounding policy. *Id.* If the Class were awarded the maximum amount of discretionary penalties associated with the rounding policy—approximately $35,000.00 in liquidated damages for unpaid minimum wages under Lab. Code § 1194.2 and $250,000.00 in wage statement penalties under Lab. Code § 226—Defendant's total exposure would not exceed $425,000. *Id.* Put differently, the Gross Settlement Amount is nearly 120 percent of Plaintiff's *maximum* exposure calculation for its rounding claims, including recovery for liquidated damages, unpaid minimum wages, overtime wages, *and* interest, in addition to the *maximum* amount of associated civil penalties for derivative wage statement violations. This is a positive result for the Class.

ii. Meal and Rest Period Claims.

Plaintiff also brought claims for meal and rest period violations. While potentially more valuable than the rounding-related claims discussed above—with a maximum realistic exposure, assuming that Plaintiff could prevail on class certification and the merits, of approximately $1,000,000.00—these claims faced obstacles to class certification and on the merits. King Decl., ¶ 32.

*First*, Miller claimed that its meal and rest period policies were not uniform across facilities. The evidence obtained in advance of mediation suggests that Plaintiff had real litigation risks associated with the lack of uniform policies and implementation. King Decl., ¶ 33. For instance, at Miller's Oakland, California plant, union-represented workers were paid for their meal periods—even though they were off-duty—at all points during the Class Period. *Id.* ¶ 34. Their time records thus do not show whether or when they took their meal periods. *Id.* Moreover, employees in certain positions executed on-duty meal period agreements stating that "due to the nature of the work I perform (*i.e.*, working alone through my shift, . . . responding to emergencies, etc.), I cannot be relieved of all duty for an uninterrupted 30-minute meal period." *Id.* ¶ 35. Miller argued that these waivers were valid and enforceable





King & Siegel LLP

under the "nature of the work" exception to Lab. Code § 226.7's meal period requirements. *Id.* And because these employees held different positions and were arguably essential for different reasons, whether the "nature of the work" exception applied to each may not be susceptible to class-wide proof— potentially defeating certification on this issue. *Id.*

*Second*, Miller argued that the "nature of the work" exception would preclude liability on the merits as to meal period claims. Under existing DLSE guidance and case law interpreting it, the "nature of the work" exception can apply where the position involves "the continuous operation of machinery requiring monitoring" that is "essential to the business of the employer." DLSE Op. Ltr. 1994.09.28 at p. 2; *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 960 (9th Cir. 2013). Many, if not all, of the Class Members' positions at Miller arguably involve "the continuous operation of machinery requiring monitoring," *i.e.*, milling equipment, that is core to Miller's business operations. King Decl., ¶ 36. Accordingly, there was a real risk that Plaintiff would lose on the merits of meal period claims relating to Class Members' on-duty meal period agreements. *Id.*

Accordingly, these claims faced significant risks that jeopardized counsel's ability to pursue them on a class-wide basis, and, even if Plaintiff surmounted those hurdles, Plaintiff was uncertain of success on the merits.

iii. Waiting Time Penalties.

Lab. Code § 203 provides that employers who "willfully" fail to pay final wages incur liability for "waiting time" penalties of up to 30 days' wages. Lab. Code § 203(a). Here, Plaintiff sought waiting time penalties for the approximately 36 Class Members who have left Miller's employment during the Class Period.[5] If the Class were awarded waiting time penalties for each former employee through the Remediation Date, penalties would total $230,000.00. King Decl., ¶ 37. However, at least some of these employees were not ad-

[5] Many Class Members arguably are not entitled to waiting time penalties because they left Miller's employ before the application statute of limitations ran on July 26, 2018. *Pineda v. Bank of America*, 170 Cal. App. 4th 388 (2009) (holding that a one-year statute of limitations applies to waiting time penalty claims).



King & Siegel LLP

King & Siegel LLP

versely affected by Miller's rounding policies and/or executed on-duty meal period agreements. *Id.* Miller further argued that waiting time penalties are not available because their failure to pay wages due was not "willful" and there was a good faith dispute as to wages owed. *Troester v. Starbucks Corp.*, 387 F. Supp. 3d 1019 (C.D. Cal. 2019), *as clarified on reconsideration*, 2019 WL 2902487; *Diaz v. Grill Concepts Servs., Inc.*, 233 Cal. Rptr. 3d 524 (2018). Given the uncertain state of the law around meal and rest period premiums and rounding claims (and the relatively recent non-applicability of any *de minimus* defense for California Labor Code claims), this argument may be persuasive. Finally, the number of Class Members who left Miller's employ during the applicable statute of limitations is even less than 36—making it unlikely that Plaintiff could certify a Class or Subclass on these claims. King Decl., ¶ 37.

As such, there is a risk that Plaintiff and the Class would not recover waiting time penalties. *Id.*

iv. PAGA Penalties.

Plaintiff filed a notice with the LWDA of his intent to seek PAGA penalties in this action, and the Settlement accordingly allocates $20,000.00 to the Class' PAGA claims. *See* Lab. Code § 2699, *et seq.* This allocation to the LWDA for PAGA penalties is appropriate and significantly larger than in Settlements that have been approved by federal district courts. *See, e.g., Chu v. Wells Fargo Investments, LLC*, No. 05-4526-MHP, 2011 WL 672645 (N.D. Cal. 2011) (approving PAGA payment of $7,500 to LWDA out of $6.9 million settlement); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609-HRL, 2013 WL 3541217 (N.D. Cal. 2013) (approving PAGA payment of $7,500 to LWDA out of $1.25 million settlement); *Davis v. Cox Commc'ns California, LLC*, No. 16-cv-989, 2017 WL 1496407, at *1 (S.D. Cal. Apr. 26, 2017) (preliminarily approving $4,000 PAGA allocation in $275,000 settlement); *Moore v. Fitness Int'l, LLC*, No. 12-cv-1551 LAB (NLS), 2014 WL 12571448, at *5 (S.D. Cal. Jan. 22, 2014) (approving $2,500 PAGA allocation when attorneys' fees award alone amounted to $200,000); *Jack v. Hartford Fire Ins. Co.*, No. 09-cv-1683 MMA (JMA), 2011 WL 4899942, at *6 (S.D. Cal. Oct. 13, 2011) (approving $3,000 PAGA allocation in

$1,200,000 settlement); *Singer v. Becton Dickinson & Co.*, No. 08-cv-821 IEG (BLM), 2010 WL 2196104, at *2 (S.D. Cal. June 1, 2010) (approving $3,000 PAGA allocation in $1,000,000 settlement); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving $1,500 PAGA allocation in $1,026,000 settlement); *In re Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]he trial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").)

**2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation; Likelihood of Maintaining Class Action Status Through Trial**

The costs, risks, and delay of trial and appeal further support preliminary approval. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Proceeding in this litigation in the absence of settlement poses various risks such as to certify a class, having summary judgment granted against Plaintiffs, failing or losing at trial. By contrast, the settlement will yield a prompt, certain, and substantial recovery for the Class, which also benefits the parties and the Court. *Id.* These considerations have been found to weigh heavily in favor of settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

Here, as discussed above, there is significant risk that Plaintiff could not certify a Class or Subclass relating to meal or rest period claims. The Class is comprised of only 131 current and former employees. If all union-represented employees were excluded from any meal or rest break Class or Subclass, for instance, Plaintiff would risk being unable to show numerosity for the remaining Class Members. King Decl., ¶ 38. Similarly, if certain positions are found to be essential such that the "nature of the job" exception to California's

meal period requirements applies, Plaintiff could also lose certification or have a class decertified. *See In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Graves v. United Indus. Corp.*, No. 2:17-cv-06983, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020). These risks are substantial, particularly in light of the relatively small Class size.

**3. The Amount Offered is Reasonable and Significant**

The Gross Settlement Amount, as well as Class Members' Individual Settlement Payments, are reasonable and significant—well within the zone of reasonableness. NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.). Each Class Member will receive an average of $2,232.00 per person out of the NSA . King Decl., ¶ 26.

This is a favorable outcome when compared to other wage and hour cases. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) (approving class action settlement with average class member payment of $450); *Garcia v. Cnty. of Los Angeles*, No. 15-cv-153549, 2018 WL 3218212, at *3 (C.D. Cal. May 21, 2018) (approving wage and hour class action settlement with average class member payment of $1,453.51); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (approving wage and hour class action settlement with average class member payment of approximately $2,000 each, referring to this result as "favorable"); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) (approving wage and hour class action settlement with average class member payment of approximately $1,000 each, which the Court referred to as a "substantial recovery given the relatively small size of the class").

**4. The Proposed Notice Process Provides Class Members With Meaningful Notice of Their Rights**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it gen-



King & Siegel LLP

King & Siegel LLP

erally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations and quotations omitted).

Here, the proposed Class Notice, attached to the Settlement as Exhibit A, and the manner of notice agreed upon in the Settlement is the "best notice practicable." Fed. R. Civ. Proc. 23(c)(2)(B). The Class Members will be identified through Miller's payroll records; within 15 days of preliminary approval, Miller will provide the Settlement Administrator with the first name, last name, social security number, last known mailing address, and the dates of employment and number of workweeks during the Class Period for each Class Member, and the Settlement Administrator will run all Class Members through the National Change of Address database before mailing notice packets. *Id.*, ¶¶ 24, 48. Miller has this data in its internal payroll and human resources systems and provided these records (with employee ID numbers in lieu of personal identifying information) in advance of mediation. King Decl., ¶¶ 17-21. As a result, the Settlement Administrator will be able to identify the vast majority of Class Members and their mailing addresses.

Moreover, the proposed Class Notice clearly informs Class Members of their rights under the Settlement. It will explain, in English and Spanish, the nature of the claims; the subject matter of the action; the terms of the settlement; the formula for calculating that Class Member's Individual Settlement Payment; procedures for disputing workweek calculations or Individual Settlement Payment amounts; and the procedures for and consequences of opting out or objecting to the Settlement. *See generally* Ex. 1, Ex. A. It contains contact information for Class Counsel and details about the Court's final approval hearing. *Id.* It discloses the maximum amount of attorneys' fees, costs, and class representative enhancement payments available under the Settlement. *Id.* In summary, the Notice is clear, informative, and transparent about the terms of the Settlement.

If a Class Member chooses to object or opt out, the Notice clearly informs them that they have 35 days from the date of mailing (the actual date will be provided in the Notice) to submit a Request for Exclusion or Objection to the Settlement. *Id.* This provides Class

King & Siegel LLP

Members with sufficient time to decide whether to exclude themselves, challenge their workweek calculations, or object to the Settlement. *See Vasquez*, 670 F. Supp. 2d at 1127 (approving a class action settlement where Class Members had 30 days from mailing to object, exclude themselves, or challenge their individual settlement share).

The Notice provides clear, accurate, and reliable information to Class Members and is the best notice practicable. This factor weighs in favor of preliminary approval.

**5. The Settlement Is the Product of Sufficient Investigation and Discovery**

Counsel for Plaintiff thoroughly investigated and evaluated the factual and legal strengths and weaknesses of this case before reaching the Settlement. King Decl., ¶¶ 17-21. Plaintiff's counsel reviewed all applicable policy documents, time card data from 2015 through August 2019, applicable collective bargaining agreements, meal period waivers, and payroll data, among other things, in advance of mediation. *Id*. Counsel requested and received additional information from Miller to assist in damages calculations, liability analysis, and risk assessment. *Id.* This information was provided to Jarrett Gorlick, an expert data analyst, who reviewed nearly 90,000 punch records and calculated damages exposure based on Miller's timeclock rounding policy, the timing and existence of time entries for meal and/or rest periods, and the average final rate of pay for the Class Members. *Id.* ¶ 20. Plaintiff's counsel also interviewed numerous Class Members about their experience at Miller and the practices at issue in this case. *Id.* ¶ 21. Put differently, Plaintiff obtained all the key evidence he would seek in discovery through informal document exchanges in advance of mediation. *Id.* ¶ 21.

These records allowed Plaintiff's counsel to develop a thorough and comprehensive understanding of the risks and rewards of continued litigation. *Id.* ¶¶ 20-21, 24. This factor weighs in favor of preliminary approval and supports Plaintiff's counsel's reasoned judgment that the Settlement is fair, adequate, and reasonable.

**6. The Experience and Views of Counsel**

This Settlement is entitled to a presumption of fairness because it is the product of

arm's-length negotiations between experienced and capable counsel after sufficient investigation and discovery. *See*, *e.g.*, *In re First Capital Holdings Corp. Financial Products*, Case No. MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Rodriguez*, 563 F.3d at 976 (holding that deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

As detailed in the King Declaration, both sides are represented by counsel with a great deal of experience in wage and hour class action litigation. Plaintiff's counsel has a significant history of litigating complex cases, including class actions, and has represented classes at settlement and class certification phases of numerous class actions. King Decl., ¶¶ 3-11. Plaintiff's counsel conducted vigorous investigation of the claims and defenses in this action, including interviewing class members, reviewing policy documents, reviewing time clock and pay rate data, and retaining an expert to evaluate damages exposure based on this information. *Id.* ¶¶ 12-24. This analysis led Plaintiff's counsel to develop a thoughtful and informed opinion that the Gross Settlement Amount and the terms of the proposed Settlement are fair, adequate, and reasonable. *Id.* ¶ 24.

The settlement was the product of extensive arm's-length negotiations conducted during an all-day mediation before the well-regarded and experienced wage-and-hour mediator Steven Pearl, Esq. King Decl. ¶ 22. Though cordial and professional, the settlement negotiation was adversarial and non-collusive in nature. *Id.* Indeed, the case did not settle at mediation; the parties continued to work with the mediator for an additional day before Mr. Pearl made a blind mediator's proposal, which both sides confidentially accepted without conferring with one another. *Id.*

In sum, the presumption of fairness applies. *See*, *e.g.*, *In re First Capital Holdings Corp.*



King & Siegel LLP

*Financial Products*, Case No. MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043; *Rodriguez*, 563 F.3d at 976. This factor, too, supports preliminary approval.

**7. The Settlement Does Not Treat Any Stakeholder Preferentially**

Finally, the Settlement should be approved because it does not preference the rights of any subset of Class Members, and treats all stakeholders equitably, including Plaintiff's counsel.

i. <u>The Settlement Does Not Discriminate Among Class Members.</u>

The Settlement fairly and equitably allocates payments to individual Class Members. Each Class Member's Individual Settlement Payment is based on the total number of workweeks in the Class Period, a "presumptively reasonable" manner of equitably treating Class Members for purposes of preliminary approval. *Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, at *24 (E.D. Cal. Jan. 17, 2020). Here, Plaintiff and Class Members were subject to the same time-clock rounding policy, inaccurate wage statements (based on rounded time entries), and other wage and hour policies affecting damages in this case. The more shifts Class Members worked, the more they were generally harmed and the more they accrued damages. King Decl., ¶ 39. On the facts of the case, a workweek calculation was both fair and practicable, while maximizing administrability and avoiding the excessive administration costs that attend to a complicated calculation of individual settlement payments. *Id.*

ii. <u>The Requested Enhancement Award is Fair and Reasonable.</u>

Plaintiff seeks an incentive award of $7,500, in addition to his Individual Settlement Payment. This incentive award is fair and reasonable.

Incentive awards for representative plaintiffs are both proper and routine to induce people to step forward and assume the burdens and obligations of representing the class. *See, e.g.*, *Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (awarding $50,000 incentive payments to class representatives); *In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 377 (S.D. Ohio 1990)



King & Siegel LLP

(awarding $35,000 to $55,000 incentive payments to class representatives). In determining the appropriate amount of an incentive award, the Court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985). In employment cases, named plaintiffs should also be awarded an enhancement to account for the risk to plaintiff's professional reputation by prosecuting, lending "his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997).

The $7,500 sought is reasonable in this case. Plaintiff was actively involved in this litigation, including by providing information to counsel, reviewing draft pleadings, connecting counsel with Class Members for pre-filing and pre-mediation investigation, attending a day-long mediation, reviewing Settlement documents, and preparing his declaration in support of this Motion. He also released all claims, including a release under Civil Code § 1542, as to Miller, *see* **Exhibit 1** at **Exhibit B**—a much broader release than the one that will bind absent Class Members if the Settlement is approved. *See Singh v. Roadrunner Intermodal Services, LLC*, No. 1:15-CV-01497-DAD-BAM, 2018 WL 2412325, at *6 (E.D. Cal. 2018).

Moreover, the "reputational risk" associated with litigating wage and hour claims appears to have *actually* negatively impacted Plaintiff in this case; at least one job application was rejected after he disclosed in advance of a background check that he had sued his prior employer. Quintero Decl., ¶ 6; King Decl., ¶ 40; *see also Bellinghausen*, 306 F.R.D. at 267 ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers."). The requested enhancement award is fair and reasonable. *Compare Singh*, 2018 WL 2412325, at *6 (granting preliminary approval to $7,500 incentive awards for 18 named plaintiffs in consolidated actions); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB,



King & Siegel LLP

2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) (approving an enhancement award of $7,500 to each class representative); *Lang v. NCH Corp.*, No. cv-10-5729-DMG, 2011 WL 13128298, at *3 (C.D. Cal. Sept. 21, 2011) (Gee, J.) (granting preliminary approval class settlement and $10,000 class representative enhancement in wage and hour class action).

As to attorneys' fees and costs, Plaintiff's counsel intends to file a motion for fees and costs in advance of a final approval hearing in this matter. The Settlement authorizes an application for up to 33 percent of the Gross Settlement Amount in attorneys' fees, or $165,000, and up to $20,000 in costs. Ex. 1, ¶¶ 32-33. This is within the range of approved attorneys' fees and costs in other class actions and is justified on the facts of the case. King Decl., ¶¶ 44-47; *Singer v. Becton Dickinson & Co.*, No. 08–CV–821–IEG, 2010 WL 2196104 (S.D. Cal. June 1, 2010) (awarding 33.33% of $1 million settlement fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (awarding 33.33% of $300,000 settlement fund); *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *30 (C.D. Cal. Nov. 23, 2013) (awarding 30% of the $2.5 million settlement fund). Plaintiff's counsel continues to incur time on this matter and thus respectfully requests that the Court consider the fairness of any attorneys' fee and cost award at the final approval hearing.

### C. **The Court Should Conditionally Certify the Class for Settlement Purposes Only**

Under the 2019 amendments to Rule 23, "a court must [] make a preliminary finding that it will likely be able to [] certify the class for purposes of judgment on the proposal" if no class has yet been certified. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019). To certify a class, the Court must find: (1) numerosity of the class; (2) common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class. Fed. R. Civ. Proc. 23(a). At the settlement stage, the dominant concern of Rule 23(a) is whether the proposed class has sufficient unity so that it is fair to bind absent class members to the decisions of the class representatives. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).

The Settlement Class, comprised of approximately 131 California employees, is de-



King & Siegel LLP

fined as "*all non-exempt employees who were employed by Defendant in California and performed work in either the mill, maintenance, or sanitation departments at any time during the Class Period who do not opt out of this Settlement*." Ex. 1, ¶ 8. This class definition satisfies Rule 23 for settlement purposes.

**1. Numerosity**

The numerosity requirement of Rule 23(a)(1) is satisfied when joinder of individual plaintiffs would be impracticable. "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). A survey of representative cases indicates that classes of more than 75 people typically satisfy the numerosity requirement. 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1762. Here, there are approximately 131 class members. King Decl., ¶ 26. This satisfies Plaintiff's burden regarding numerosity. *See*, *e.g.*, *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011).

**2. Commonality and Typicality**

A class has sufficient commonality if there are questions of law or fact common to the class. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Because the Ninth Circuit construes commonality liberally, it is not necessary that all questions of law and fact be common." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (internal quotation marks and alterations omitted). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Thus, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-05 (2005)). Commonality can be met even if there is only "a single issue common to the proposed class." *Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, at *9 (E.D. Cal. Jan. 17, 2020);

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (stating that even a single common question will satisfy Rule 23(a)(2)); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1064 (C.D. Cal. 2010); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996) (same); *In re Paxil Litig.*, 212 F.R.D. 539, 549 (C.D. Cal. 2003).

The typicality requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class," meaning they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted).

Plaintiff's claims are typical of the Class Members. His claims hinge on the same injuries: failure to compensate for all hours worked, failure to provide accurate wage statements as a result of the rounding policy, and requiring on duty-meal periods. King Decl., ¶¶ 20, 35; Quintero Decl., ¶¶ 4-5. This satisfies Plaintiff's burden of showing commonality. *See, e.g.*, *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 U.S. Dist. LEXIS 10848, at *15 (E.D. Cal. Jan. 21, 2020) (finding commonality where "[t]he proposed class action stems from the same factual and legal issues" including whether rest period policies were adequate); *Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2019 U.S. Dist. LEXIS 196964, at *13 (S.D. Cal. Nov. 13, 2019); *Franco v. Ruiz Food Prods.*, No. 1:10-CV-02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *5-6 (E.D. Cal. Nov. 27, 2012).

For the same reasons, as described above, Plaintiff's claims are typical of all Class Members. He was subject to the same policies as all other Class Members, and suffered the same injuries. Quintero Decl, ¶¶ 3-5. These issues form the core of the Class allegations in this case. While typicality is satisfied by the presence of one shared claim between the class representative and the Class Members, *see Millan v. Cascade Water Servs., Inc.*, 310 F.R.D.



King & Siegel LLP

593, 612 (E.D. Cal. 2015), Plaintiff shares numerous claims and injuries with his fellow Class Members. Accordingly, his claims are typical of the class.

**3. Adequacy**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." This inquiry involves two prongs: (1) do the named plaintiff and their counsel have any conflicts of interest with Class Members and (2) will the named plaintiffs and their counsel act vigorously on the Class' behalf. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Neither Plaintiff nor proposed Class Counsel has any conflicts of interest with the Class Members. King Decl., ¶ 41; Quintero Decl., ¶ 7. As noted above, Plaintiff's claims are typical of the Class and he has the same interest in this litigation—obtaining unpaid wages and civil penalties due to Miller's timekeeping and break policies—as the absent Class Members. Quintero Decl., s¶ 3. Plaintiff is ready, willing, and capable of performing his duties and understands the obligations he owes to Class Members. *Id.* ¶ 7. Proposed Class Counsel has significant experience litigating complex cases, including employment cases, and has been appointed class counsel in wage and hour class actions similar to this one. King Decl., ¶¶ 3-12. Class Counsel has diligently and vigorously represented the Class' interests in this matter. *See generally* King Decl. Accordingly, Plaintiff and proposed Class Counsel satisfy the adequacy standard.

**4. A Class Action is the Superior Mechanism for Adjudicating this Dispute**

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that



King & Siegel LLP

a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id.* As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 619-62. In this case, common questions of law and fact exist and predominate, including: whether Miller (1) unlawfully and/or willfully failed to compensate Plaintiff and Class Members at a minimum wage for all hours worked as a result of its rounding policies; (2) has a common policy and/or practice of failing to maintain accurate payroll records in the State of California; (3) has a policy and/or practice of failing to pay Plaintiff and Class Members final wages owed upon termination; and (4) violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., by violating the above provisions of law, by treating Plaintiff and Class Members unfairly by depriving them of rest and/or meal periods, failing to provide them with compensation in lieu of meal and/or rest periods, failing to pay wages upon termination, failing to furnish accurate and timely itemized wage statements upon payment of wages, and failing to pay all compensation due upon discharge. King Decl. ¶ 42.

Further, the class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. *Id.* ¶ 43. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. *Id.* Individualized litigation also presents a potential for inconsistent or con-



King & Siegel LLP

King & Siegel LLP

tradictory judgments. *Id.* In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *Id.* Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## V. CPT SHOULD BE APPOINTED SETTLEMENT ADMINISTRATOR

The parties propose that the Court appoint CPT Group, Inc. to serve as the Settlement Administrator. King Decl., ¶ 27. CPT Group, Inc. is experienced in administering class action settlements and has submitted a declaration explaining their qualifications and credentials, as well as providing their quote in this matter. *See generally* Green Decl. Plaintiff's counsel obtained competitive quotes in this matter and negotiated for CPT to cap fees at $10,000, even if actual costs exceed $10,000. *Id.* Accordingly, the terms proposed by CPT are fair and CPT should be appointed as Settlement Administrator.

## VI. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

The parties propose that the Court schedule a hearing for final approval of the Settlement, including Plaintiff's request for attorneys' fees, costs, and Plaintiff's enhancement award, on the earliest available date after August 10, 2020.

## VII. CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests that the Court enter an order granting preliminary approval to the Settlement.

Dated: April 10, 2020

Respectfully Submitted,

**KING & SIEGEL LLP**

By: [signature]

Julian Burns King
Elliot J. Siegel
John L. Schwab
Attorneys for Plaintiff and the Putative Class

**I, Julian Burns King, certify and declare as follows:**

I am employed in the County of Los Angeles, California. I am over the age of eighteen and I am not a party to this action. My business address is King & Siegel LLP, 724 S. Spring Street, Ste. 201, Los Angeles, California 90014.

On April 10, 2020, I served the following documents using the method(s) of service indicated herein:

1. **Motion for Preliminary Approval of Class Action Settlement**
2. **Declaration of Julian Burns King**
3. **Declaration of Robert Quintero**
4. **Declaration of Julie Green**
5. **[Proposed] Order**

These documents have been served on the interested parties in this action identified below:

**Defendant Miller Milling Company, LLC**
c/o Gabrielle M. Wirth
c/o Nisha Verma
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626

**[X] BY ELECTRONIC SERVICE AND US MAIL:** I hereby certify that a copy of the preceding document was electronically filed and served through the Court's ECF system and was mailed to the address set forth above by US Mail, postage prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 10, 2020, at Los Angeles, California.

By: /s/ Julian Burns King
Julian Burns King