Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
John L. Schwab (Bar No. 307599)
john@kingsiegel.com
**KING & SIEGEL LLP**
724 S. Spring Street, Ste. 201
Los Angeles, California 90014
*tel*:  (213) 465-4802
*fax*:  (213) 465-4803

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT QUINTERO, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>MILLER MILLING COMPANY, LLC, a California corporation, and Does 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-CV-07459-DMG-JC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>*Declarations of Julian Burns King and Bryan Valdez filed concurrently; [Proposed] Order*<br><br>Judge: Hon. Dolly Gee<br>Date:  July 31, 2020<br>Time:  10:00 a.m.<br>Dept.:  8C<br><br>Removed On:      August 28, 2019 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on July 31, 2020 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Dolly M. Gee, Plaintiff Robert Quintero, as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order: (1) granting final approval of the class action settlement achieved in this matter and entering judgment pursuant to the terms of the settlement; (2) fully and finally approving and directing distribution of the Net Settlement Amount pursuant to the terms of the settlement; (3) fully and finally approving the ward of attorneys' fees in the amount of $165,000; (4) fully and finally approving the reimbursement of actual litigation costs in the amount of $9,900.99; (5) fully and finally approving an incentive payment totaling $7,500 to named Plaintiff and Class Representative Robert Quintero; (6) fully and finally approving Settlement Administration Costs in the amount of $10,000.

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in Support thereof; the declarations of Julian Burns King and Bryan Valdez in support thereof; the Joint Stipulation of Settlement and Release of Class Action; the other records, pleadings, and papers filed in this action; and upon such other documentary and verbal evidence or argument as may be presented to the Court at the hearing of this motion.

Dated: July 17, 2020

Respectfully Submitted,

**KING & SIEGEL LLP**

By: *Julian Burns King*
Julian Burns King
Elliot J. Siegel
John L. Schwab
Attorneys for Plaintiff and the Putative Class

i

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................... 1

II.  THE PARTIES HAVE GIVEN THE BEST PRACTICABLE NOTICE OF THE SETTLEMENT ............................................................................................ 1

III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ............................................................................................ 3

   A.  *Legal Standard* .................................................................................. 3

   B.  *Strengths of the Case and Risks of Continued Litigation* ................. 4

   C.  *Amount Offered in Settlement* .......................................................... 5

   D.  *Extent of Discovery Completed and Stage of Proceedings* .............. 6

   E.  *Counsel Believes the Settlement is in the Best Interest of the Settlement Class* ................. 7

   F.  *There Are No Opt-Outs or Objectors* ............................................... 7

IV.  THE REQUESTED FEES, COSTS, AND ENHANCEMENT ARE REASONABLE ........................................................................................... 8

V.   CONCLUSION ........................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 1013) ............................. 4

*Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) ..................................................................................................................... 8

*Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ................................. 3

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974) ....................... 5

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ............................ 8

*Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003) ..................................... 6

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) ............................................ 1

Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ............................ 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ...................................... 3

*Isby v. Bayh,* 75 F.3d 1191, 1200 (7th Cir.1996) ............................................................. 7

*Linney v. Cellular Alaska Partnership*, 151 F. 3d 1234, 1242 (9th Cir. 1998) .................. 5

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) .......................... 1

Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) ........................................................................................................................... 3

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985) ........................................ 2

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ................................. 4

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ............................. 3

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) ............................................................................................................................ 3

## STATUTES

Fed. R. Civ. Proc. 23(c)(2)(B) ........................................................................................... 1

Fed. R. Civ. Proc. 23(e)(1) ................................................................................................ 3

Federal Rule of Civil Procedure 23 .................................................................................. 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion seeks final approval of a wage and hour class action settlement between Plaintiff Robert Quintero and Defendant Miller Milling Company, LLC ("Miller") (collectively, the "Parties"). Pursuant to the Court's May 15, 2020 order preliminarily approving the Settlement, notice was mailed to all Class Members on or before June 3, 2020. Valdez Decl. ¶ 7. The reaction of Class Members to the Settlement has been overwhelmingly positive. Of the 133 Class Members, no Class Members have objected to or requested exclusion from the Settlement. *Id.* ¶ 10. This is likely because the Settlement is a good result for the class: it achieves almost 40% of the total maximum realistic damages exposure and is a non-reversionary, guaranteed fund that will be automatically disbursed to all Class Members without the need for making a claim. *See* Dkts. 19 at 8, 19-1 at ¶ 29. Given that the total exposure for the strongest claim (based on time clock rounding) was only $140,000, and the remaining claims faced barriers to class certification, this is an excellent result. Dkts. 19 at 10, 19-1 ¶ 31. Following entry of an Order granting final approval, Class Members will receive an average of $2,199.99, with the highest payments totaling $3,650.07, less applicable taxes and garnishments. Valdez Decl. ¶ 11.

For these reasons, Plaintiff and Class Counsel respectfully ask the Court to enter an order granting final approval ensuring.

## II. THE PARTIES HAVE GIVEN THE BEST PRACTICABLE NOTICE OF THE SETTLEMENT

In approving a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections"). The notice satisfies due process if it contains a description of the litigation and explanation of the right to opt-out of the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The notice procedure approved by the Court was the best notice practicable. Pursuant to this Court's order granting preliminary approval on May 15, 2020, Dkt. 24, CPT Group, Inc. ("Administrator") mailed the court-approved notice to all Class Members by first class mail on June 3, 2020. Valdez Decl. ¶ 7, Ex. A (final Court-approved notice). The deadline to opt out of or object to the settlement was 35 days thereafter, on July 8, 2020. *Id.* ¶ 9. Class Members were not required to file a claim in order to participate in the settlement; the administration of the settlement payments to Class Members is an automatic process. *Id.* ¶ 9.

A total of seven notice packets were returned as undeliverable to the Administrator. The Administrator made reasonable efforts to find a valid mailing address for each of these Class Members by using standard skip-tracing devices. *Id.* ¶ 8. After the Administrator made diligent efforts to identify a correct mailing address, only two notice packets were returned as undeliverable. *Id.* ¶ 8.

The notice packet was thorough and accurately informed Class Members of their rights. It explained the Settlement; how to object; how to request exclusion; the deadlines for objecting/requesting exclusion; the attorneys' fees to be paid under the Settlement; the incentive award to be sought under the Settlement; and individual Class Members' estimated recovery under the Settlement net of expenses, fees, incentive awards, and costs, which are all specified in the notice papers.  It clearly informed Class Members that those who chose not to opt out would be bound by the Settlement. *Id.*, Ex. A. No Class Members opted out. *Id.* ¶ 10.

In addition, Class Counsel provided notice of the Settlement to the Labor and Workforce Development Agency, as required by PAGA, on April 3, 2020. King Decl. ¶ 36. The LWDA did not object to the Settlement. *Id.*

The Court should proceed to consider the fairness and adequacy of the Settlement

and enter an order approving it, secure in the knowledge that Class Members have been afforded the right and opportunity to participate fully in the approval process.

## III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. Legal Standard

Federal Rule of Civil Procedure 23 provides that class actions may only be settled, voluntarily dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e)(1). The Court should engage in a two-step process to evaluate a proposed class action settlement. First, the Court must decide whether the Settlement merits preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. *Id.* A court should approve a class settlement under Rule 23(e) if it "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

Courts in the Ninth Circuit look to the following eight factors to assess whether final approval of a settlement is warranted: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "Not all of these factors will apply to every class action settlement" and "[u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telcomms.*, 221 F.R.D. at 525-26. In addition, Ninth Circuit courts consider the manner by which the settlement was reached to ensure that it is not a product of fraud or collusion. *See*

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The Court is should not ask whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 1013) (quoting *Hanlon*, 150 F.3d at 1027).

### B. Strengths of the Case and Risks of Continued Litigation

The strengths of the case and risks of continued litigation are thoroughly detailed in the Motion for Preliminary Approval. Dkt. 19 at 8-12. Nonetheless, they are summarized here for reference.

Plaintiff's unpaid time/unpaid overtime claims were based on Miller's practice of rounding time clock entries to the nearest quarter-hour. This meant that, for instance, a Class Member who clocked in five minutes early and clocked out five minutes late would be deprived of ten minutes worth of wages that day. Over the Class Period, Class Members on net lost wages because of Miller's time clock rounding policy. Class Counsel views these claims as strong and certifiable, but linked to limited damages: approximately $140,000 of unpaid wages over the course of the class period. Dkt. 19 at 9; Dkt. 19-1 ¶ 31.

Plaintiff also alleged claims based on non-compliant meal and rest period policies. Specifically, Miller required workers in certain positions to agree to on-duty meal periods, and its rest period policies arguably required employees to remain on duty in certain circumstances. These claims had higher potential damages, but significant litigation risks—primarily the vast disparities in policies applicable to employees at different work sites and in different positions. Dkt. 19 at 10-11.

Finally, Plaintiff sought waiting time and PAGA penalties on behalf of himself and the Class. Here, Defendant faced a wide range of discretionary penalties that would have required Plaintiff to prove that violations were "willful," which would have been challenging and risky. Dkt. 19 at 11-12.

The Settlement provides fair and prompt relief to Class Members in lieu of lengthy and expensive continued litigation. Defendant contested liability and raised arguments against the possibility of certifying a class, particularly with respect to unionized workers at the Oakland plant. But even if Plaintiff *had* succeeded in certifying the Class as to all claims, the Parties would have proceeded to trial, with the inherent possibility of a subsequent appeal. The immediate and substantial recovery now, versus a years-long trial and appeal process regarding various potential issues, weighs in favor of approval. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

### C.   Amount Offered in Settlement

The reasonable high-end exposure estimated by Plaintiff and its expert is approximately $1.3 million (including penalties). In light of Defendant's continued non-admission of liability, the Court can and should discount the total value of the claims given the risks and costs described above.

A Settlement of almost 40% the total estimated exposure falls well within the bounds of reasonableness. *See Ma*, 2014 WL 360196 at *5 (finding a settlement that is 9.1% of the total value of the action is within the range of reasonableness) (citing *Linney v. Cellular Alaska Partnership*, 151 F. 3d 1234, 1242 (9th Cir. 1998)). A settlement may be fair and reasonable even where it provides only a fraction of what could have been obtained at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974) ("that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is" inadequate and should be disapproved). Here, the Settlement compensates the Class Members for their unpaid time due to rounding, in addition to approximately 1/3 of the total exposure for the remaining claims, which are challenging. This is a positive result.

### D. Extent of Discovery Completed and Stage of Proceedings

The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an "adequate opportunity to assess the pros and cons of settlement and further litigation." *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003).

Here, as recounted in detail in the Motion for Preliminary Approval, Dkt. 19 at 3-4, 15, Plaintiff's counsel requested significant evidence and documentation as a condition of engaging in early mediation. Specifically, counsel for Plaintiff requested and received the following informal discovery in early December 2019: (1) the collective bargaining agreement applicable to employees in the Oakland facility; (2) all three employee handbooks used during the Class Period that set forth formal written meal and rest break policies; (3) updated policies implemented in Fall 2019 that evidence elimination of time clock rounding procedures; (4) meal period waivers executed by putative Class Members; (5) all employee punch records, by employee ID number and facility, from 2015 through the end of August 2019; (6) the total number of workweeks and putative class members; and (7) the final rate of pay for each putative Class Members, by employee ID number. King Decl. ¶ 13.

In September 2019, counsel for Miller proposed mediation. King Decl., ¶ 12. Plaintiff agreed to mediate in December 2019, provided counsel for Miller produced documents sufficient to permit a full and fair evaluation of the claims alleged on behalf of the Class. Specifically, counsel for Plaintiff requested and received the following informal discovery in early December 2019: (1) the collective bargaining agreement applicable to employees in the Oakland facility; (2) all three employee handbooks used during the Class Period that set forth formal written meal and rest break policies; (3) updated policies implemented in Fall 2019 that evidence elimination of time clock rounding procedures; (4) meal period waivers executed by putative Class Members; (5) *all* employee punch records, by employee ID number and facility, from 2015 through the end of August 2019; (6) the total number of workweeks and putative class members; and (7) the final rate of pay for each putative Class Members, by employee ID number. King Decl. ¶ 13.

Plaintiff's counsel analyzed all of the data provided by Miller and retained the services of an expert, Jarrett Gorlick, who conducted numerous data analyses, including but not limited to whether Miller's rounding policy systematically undercompensated putative Class Members; the amounts of all underpayments; the number of missed meal periods based on time punch data; the number of rest periods to which putative Class Members were entitled; and the maximum and realistic exposure for each claim alleged in the Complaint. *Id.* ¶ 15. Miller's production was fulsome and allowed Plaintiff's counsel to develop a sound understanding of the merits of the claims; their value; and the viability of the defenses asserted by Defendant. *Id.* ¶ 16.

### E. Counsel Believes the Settlement is in the Best Interest of the Settlement Class

Counsel's views and experience also weigh in favor of approving the Settlement. *See Isby v. Bayh,* 75 F.3d 1191, 1200 (7th Cir.1996) (noting that a district court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate"); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") *aff'd,* 661 F.2d 939 (9th Cir. 1981).

Plaintiff's counsel has a significant history of litigating complex cases, including class actions, and has represented classes at settlement and class certification phases of numerous class actions. King Decl. ¶¶ 3-11.  Plaintiff's counsel conducted vigorous investigation of the claims and defenses in this action, including interviewing class members, reviewing policy documents, reviewing time clock and pay rate data, and retaining an expert to evaluate damages exposure based on this information. *Id.* ¶¶ 12-17.  This analysis led Plaintiff's counsel to develop a thoughtful and informed opinion that the Settlement amount and the terms of the Settlement are fair, adequate, and reasonable. *Id.* ¶ 19.

### F. There Are No Opt-Outs or Objectors

The Court may appropriately infer that the class action settlement is fair, adequate

7

MEMORANDUM OF POINTS AND AUTHORITIES

and reasonable when, among other reasons, few class members object to it. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Here, the reaction of the Settlement Class Members has been one of overwhelming approval. No Class Members requested exclusion, and there are no objections to the Settlement. Valdez Decl. ¶ 10. *See Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections filed and one of 2,765 class members requested exclusion from settlement).

## IV. THE REQUESTED FEES, COSTS, AND ENHANCEMENT ARE REASONABLE

As detailed in Plaintiff's Motion for Attorneys' Fees, Costs, and Class Representative Incentive Payment, Plaintiff and Class Counsel respectfully request that the Court approve Class Counsel's application for attorneys' fees in the amount of $165,000 (33% of the Gross Settlement Amount), reimbursement of actual litigation costs of $9,900.99 (well below the allotted $20,000 in the Settlement), Administrator's costs of $10,000, and a Class Representative incentive payment of $7,500.

These awards and reimbursements are all warranted in light of the work performed on behalf of the Class, particularly in light of the Class Members' overwhelming approval of the Settlement.

## V. CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests that the Court enter an order granting final approval to the Settlement, approving distribution of the Settlement funds to Class Members pursuant to the terms of the Settlement, approving Plaintiff's request for an incentive award or enhancement payment, approving Plaintiff's request for an award of attorneys' fees and litigation costs pursuant to the terms of the Settlement, and entering final judgment as to all members of the Class in this action.

Dated: July 17, 2020

Respectfully Submitted,

**KING & SIEGEL LLP**

By: /s/ Julian Burns King
Julian Burns King
Elliot J. Siegel
John L. Schwab

Attorneys for Plaintiff and the Putative Class

I, Julian Burns King, certify and declare as follows:

I am employed in the County of Los Angeles, California. I am over the age of eighteen and I am not a party to this action. My business address is King & Siegel LLP, 724 S. Spring Street, Ste. 201, Los Angeles, California 90014.

On July 17, 2020, I served the following documents using the method(s) of service indicated herein:

1. **Motion for Final Approval of Class Action Settlement**
2. **Declaration of Julian Burns King**
3. **Declaration of Bryan Valdez**
4. **[Proposed] Order**

These documents have been served on the interested parties in this action identified below:

**Defendant Miller Milling Company, LLC**
c/o Gabrielle M. Wirth
c/o Nisha Verma
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626

**[X] BY ELECTRONIC SERVICE:** I hereby certify that a copy of the preceding document was electronically filed and served through the Court's ECF system and was mailed to the address set forth above by US Mail, postage prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 17, 2020, at Los Angeles, California.

By: _____
Julian Burns King